Andrew M. Calamari
Sanjay Wadhwa
Daniel R. Marcus
Nicholas Pilgrim
Barry O'Connell
Attorneys for the Plaintiff
U.S. SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-9089 (O'Connell)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,  :
                                      :
                    Plaintiff,        :
                                      :     __ Civ. _____ (__)
        - against -                   :
                                      :     **COMPLAINT**
OSCAR WU,                             :     ECF Case
                                      :
                    Defendant.        :
                                      :
-----------------------------------------------------------------x

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint against defendant Oscar Wu ("Wu"), and alleges as follows:

## SUMMARY

1. This matter involves insider trading violations by Wu, a former portfolio manager at a New York-based investment adviser ("Investment Adviser A").

2. During the course of his employment at Investment Adviser A, Wu learned material, non-public information about a planned patent acquisition and revenue-sharing agreement between two prominent telecommunications companies, Unwired Planet, Inc.

("UPIP") and Telefonaktiebolaget L M Ericsson ("Ericsson"). Wu learned this information as a result of Investment Adviser A's entering into an agreement with UPIP, pursuant to which Investment Adviser A received information from UPIP on UPIP's proposed agreement with Ericsson in connection with a potential investment by Investment Adviser A in UPIP.

3. Wu used this material, non-public information to purchase UPIP securities in a brokerage account owned by one of his relatives ("Relative 1") in November and December 2012, and advised another of his relatives ("Relative 2") to purchase UPIP shares in December 2012, which Relative 2 then did.

4. On January 10, 2013, UPIP announced the agreement with Ericsson and its stock price rose 43% from the previous day's closing price, resulting in combined illicit gains of approximately $17,000 in the accounts of Wu's two relatives.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

5. The Commission brings this action pursuant to the authority conferred upon it by Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)]. The Commission seeks permanent injunctions against defendant Wu, enjoining him from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, disgorgement of all ill-gotten gains from the unlawful insider trading activity set forth in this Complaint, together with prejudgment interest, and civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]. Finally, the Commission seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to Sections 21(d) and (e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and (e), 78u-1 and 78aa].

7. Venue in this District is proper because the defendant transacted business in the Southern District of New York during the relevant period and because one or more acts or transactions constituting the violations occurred in the Southern District of New York. For example, Investment Adviser A's offices are located in New York, New York, and Wu placed certain of the illegal trades described herein while located in New York, New York.

8. In connection with the conduct alleged in this Complaint, defendant made use of a means or instrumentality of interstate commerce, of the mails, or of a facility of any national securities exchange.

## DEFENDANT

9. During the relevant time period, **Wu**, age 46, resided in Short Hills, New Jersey and worked in New York, New York as a portfolio manager on Investment Adviser A's Event/Merger Arbitrage Trading Desk. Wu has held series 7, 24, 55 and 63 licenses.

## RELATED PERSONS AND ENTITIES

10. **Relative 1** lives outside of the United States, but has U.S. citizenship. During the period relevant to this action, Wu exercised control over Relative 1's brokerage account and purchased shares of UPIP in that account based on material, non-public information.

11. **Relative 2** lives in the United States and is a member of Wu's immediate family. Relative 2 is employed outside of the securities industry. Wu and Relative 2 have a meaningfully close personal relationship and there is a history of loans and personal favors between the two.

12.     **Investment Adviser A** is a Delaware partnership with its principal place of business in New York, New York. Investment Adviser A is registered with the Commission as an investment adviser and manages over $2.9 billion in assets, primarily in the public equity, fixed income, and alternative investment markets.

13.     **UPIP** is a Delaware corporation with its principal place of business in Reno, Nevada. UPIP is an intellectual property and technology licensing company focused on the mobile telecommunications industry. UPIP has been a Commission-reporting company since 1999 and trades on the NASDAQ Stock Market under the symbol "UPIP." UPIP's common stock is registered with the Commission under Section 12(b) of the Exchange Act.

14.     **Ericsson** is a public limited liability company organized under the laws of the Kingdom of Sweden. Ericsson is a worldwide provider of communications networks and telecommunications services. Ericsson's American Depositary Shares are traded on the NASDAQ Stock Market under the symbol "ERIC" and are registered with the Commission under Section 12(b) of the Exchange Act.

## FACTS

15.     Wu worked as a portfolio manager on Investment Adviser A's Event/Merger Arbitrage desk from March 2011 until April 2013. At all times relevant to this Complaint, Wu understood that buying or selling securities for himself or others while in possession of material, non-public information or "tipping" third parties to place trades based on such information would violate Investment Adviser A's Code of Ethics.

16.     As of October 2012, a portfolio that Wu managed on behalf of Investment Adviser A held an equity position in UPIP.

17. On or about October 26, 2012, UPIP contacted Investment Adviser A about a potential investment opportunity to provide financing for the company in connection with the potential patent acquisition and revenue-sharing agreement with Ericsson. That same day, Wu was notified by email that Investment Adviser A had placed UPIP on its restricted list – a list comprised of securities that Investment Adviser A's Code of Ethics prohibits employees from trading, either on behalf of the firm and its clients or for themselves.

18. On November 20, 2012, UPIP and Investment Adviser A executed a Common Interest Agreement, which contained a confidentiality clause. A copy of the Common Interest Agreement was sent to Wu via email that same day.

19. The Common Interest Agreement stated that while UPIP and Investment Adviser A "are in discussions to establish a business and financial relationship regarding the [UPIP] patent portfolio," Investment Adviser A will keep any information which constitutes material, non-public information concerning UPIP "confidential and not trade [UPIP's] securities until such time as such information" becomes publicly available.

20. On the same day that the Common Interest Agreement was executed, November 20, 2012, Wu participated in a confidential meeting between Investment Adviser A and UPIP and learned the following facts:

    (A)    UPIP was in the process of negotiating a patent purchase agreement with Ericsson pursuant to which Ericsson would transfer to UPIP 2,185 patents and patent applications; these patents, which relate to wireless communications, were issued in the United States, China, Korea, Europe, Brazil, and India;

(B) Under the contemplated agreement, Ericsson would also assign to UPIP, for no additional consideration, 100 patents each year from January 1, 2014 to January 1, 2019;

(C) As consideration for the Ericsson transferred patent portfolio and additional patents, UPIP would pay Ericsson: (i) 20% of the cumulative gross revenue generated by the transferred patent portfolio until revenue equaled $100 million; plus (ii) 50% of the cumulative gross revenue in excess of $100 million; plus (iii) 70% of the cumulative gross revenue in excess of $500 million.

21. The transferred patents from Ericsson to UPIP significantly broadened UPIP's mobile-internet-focused patent portfolio, which UPIP would license and earn profits from pursuant to the planned agreement.

22. On November 21, 2012, the day after Wu participated in this confidential meeting between Investment Adviser A and UPIP, he purchased 15,000 UPIP shares in a brokerage account held in the name of Relative 1. At the time of the trades, Relative 1 was living outside of the United States and his account statements were being mailed directly to Wu's home in New Jersey. Wu initiated the trades through a self-service customer kiosk located in a New York, New York office location of the brokerage firm that held Relative 1's account. The office where the trades were initiated was located two blocks from Investment Adviser A's offices.

23. On December 12, 2012, Wu placed a limit order to purchase additional UPIP shares in Relative 1's account. The next day, 463 UPIP shares were purchased in Relative 1's

account as a partial fill of the limit order that Wu placed on December 12. Wu placed the limit order from his home through the brokerage firm's online trading platform.

24. Between November 20, 2012 and December 5, 2012, Wu advised Relative 2 to purchase UPIP shares. On December 7, 2012, Relative 2, who had never purchased UPIP stock prior to receiving a tip from Wu, purchased 12,000 shares of UPIP stock.

25. On January 10, 2013 at approximately 4:05 pm (Eastern Standard Time), UPIP announced its planned deal with Ericsson. UPIP's stock price, which had closed at $1.31 on January 10, 2013 (just prior to the announcement), opened the next day at $1.80 – 37% higher than the previous day's closing price – and closed at $1.87 – 43% higher than the previous day's closing price. UPIP's trading volume on January 11, 2013 was ten times greater than the previous month's average trading volume.

26. Following the UPIP announcement, the value of UPIP shares owned by Relative 1 and Relative 2 increased by $9,469 and $7,440, respectively.

27. On or about April 25, 2013, Investment Adviser A received a regulatory inquiry regarding UPIP. The firm's general counsel asked Wu about trading by Relative 1 and Relative 2 ahead of the January 2013 UPIP announcement. Wu did not respond to the inquiry and subsequently ceased working for Investment Adviser A.

## CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

28. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1 through 27 inclusive, as if they were fully set forth herein.

29. The information that Wu learned regarding UPIP and the transactions and negotiations identified in this Complaint, and each component thereof, was material and non-public. In addition, the information was considered confidential by UPIP, the company that was the original source of the information, and by Investment Adviser A, which had a Code of Ethics that limited the use of confidential information learned by the firm's employees during the course of their employment.

30. Wu was employed by Investment Adviser A and owed a fiduciary duty or an obligation arising from a similar relationship of trust and confidence to both Investment Adviser A and to the shareholders of UPIP. Wu knew of, or recklessly disregarded, these duties by virtue of both Investment Adviser A's Code of Ethics and the Common Interest Agreement between Investment Adviser A and UPIP.

31. Wu knowingly or recklessly breached the duties he owed to Investment Adviser A and the shareholders of UPIP by trading in Relative 1's account based on material, non-public information regarding UPIP, and by tipping this material, non-public information to Relative 2 with the expectation of receiving a benefit from doing so and/or with the intention of benefitting Relative 2. Wu's tip to Relative 2 was intended as a gift to Relative 2, and was consistent with the close familial relationship and history of personal favors exchanged between Wu and Relative 2.

32. Wu is liable for Relative 2's trading because he directly or indirectly caused Relative 2 to effectuate purchases of UPIP securities.

33. By engaging in the conduct described above, defendant Wu directly or indirectly, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

(a) employed devices, schemes or artifices to defraud;

(b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

(c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

34. By reason of the foregoing, defendant violated, and unless enjoined will likely again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## RELIEF SOUGHT

**WHEREFORE**, the Commission respectfully requests that the Court enter a final judgment:

### I.

Permanently restraining and enjoining defendant from, directly or indirectly, violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

II.

Ordering defendant to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon, pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

III.

Ordering defendant to pay civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

IV.

Granting such other and further relief as this Court may deem just and proper.

Dated: October ?, 2015
       New York, New York

Respectfully submitted,

By: _____
Andrew M. Calamari
Regional Director

Sanjay Wadhwa
Daniel R. Marcus
Nicholas Pilgrim
Barry O'Connell
Attorneys for Plaintiff
U.S. SECURITIES AND EXCHANGE
  COMMISSION
New York Regional Office
Brookfield Place, 200 Vesey Street, Ste. 400
New York, New York 10281-1022
(212) 336-9089 (O'Connell)